**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sherri Bergan,<br><br>   Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>   Defendant. | No. CV-13-00856-PHX-NVW<br><br>**ORDER** |

Plaintiff Sherri Bergan seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i) and 223(d) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.   BACKGROUND**

   **A.   Factual Background**

Plaintiff was born in August 1965. She completed high school and a few years of college and worked as a waitress, administrative assistant, and timekeeper. She has low back problems. She testified that the main reason she is unable to work is severe pain in her leg caused by a back injury in 2007. She does not use an assistive device for walking, such as crutches or a cane.

### B. Procedural History

On August 5, 2009, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning March 20, 2009. On August 3, 2011, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified.

On August 26, 2011, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On April 26, 2013, Plaintiff sought review by this Court.

## II. STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

## III. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2011, and that she has not engaged in substantial gainful activity since March 20, 2009. At step two, the ALJ found that Plaintiff has the following severe impairment: lumbar stenosis with radiculopathy. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.

At step four, the ALJ found that Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b); except for the following limitations: she is capable of standing and/or walking only two hours in an eight-hour workday; she is capable of frequently pushing and/or pulling with her lower extremities; and occasionally climbing ramps or stairs; but is precluded from climbing

>ladders, ropes or scaffolds.  She is capable of occasionally balancing, bending, stooping, kneeling, crouching and crawling; but is precluded from all exposure to unprotected heights.

The ALJ further found that Plaintiff is capable of performing past relevant work as a timekeeper or administrative assistant.

## IV.     ANALYSIS

### A.     The ALJ Did Not Err in Weighing Medical Source Evidence.

#### 1.     Legal Standard

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians:  (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians.  *Id.* Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record.  *Id.*  Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion."  *Orn*, 495 F.3d at 631.

#### 2.     Treating Physician Matthew Duke, D.O.

Plaintiff saw Dr. Duke of Southwest Family Practice on March 22, 2011, for prescription refills.  The progress note does not indicate that Dr. Duke examined Plaintiff, reviewed any records, took any medical history, or identified any diagnosis.  The record does not include any evidence of actual treatment by Dr. Duke.

On July 25, 2011, Dr. Duke completed a Medical Assessment of Ability to Do Work Related Physical Activities and a Pain Functional Capacity (RFC) Questionnaire.

He indicated a diagnosis of lumbar disc degenerative joint disease although there are no records showing how he determined the diagnosis.  He opined that the most Plaintiff can lift and/or carry is less than 10 pounds, the longest she can stand or walk is less than 2 hours in an 8-hour work day, and the longest she can sit is less than one hour in an 8-hour work day.  He opined that she must alternate sitting and standing every 20 minutes and can never climb, balance, stoop, kneel, crouch, or crawl.  He stated that his finding supporting these limitations is "severe pain, not safe for balance."  Also on July 25, 2011, Plaintiff was discharged from physical therapy with no limitation on walking and only mild limitations on sitting, bending, and recreational exercise.

Plaintiff contends that the ALJ erred by giving little weight to Dr. Duke's opinion because there is "ample objective evidence in the record to support Dr. Duke's assessments," Dr. Duke did not discredit Plaintiff's reported symptoms, and his opinion "should be given greater weight based on the nature of the treatment relationship and the consistency and supportability of the assessments when compared to the remainder of the record."  The record does not show that Dr. Duke had any "treatment relationship" with Plaintiff, only that she obtained prescription refills from him.  Because the record does not include any treatment notes, it is impossible to determine whether Dr. Duke had any basis upon which to credit or discredit Plaintiff's reported symptoms.  Moreover, as the ALJ found, Dr. Duke's opinion is the only opinion evidence in the record that imposed limitations greater than those included in the ALJ's residual functional capacity assessment.

### 3. Non-Examining State Agency Physicians

Plaintiff further contends that the ALJ erred by giving great weight to the opinions of the non-examining state agency physicians, whom she does not identify.  Plaintiff alludes to the ALJ's consideration of Alicia Blando, M.D., a state agency medical consultant who reviewed the medical evidence of record and provided a residual functional capacity assessment in April 2010.  The ALJ found Dr. Blando's opinion to be consistent with the objective findings, opinion evidence, and the record as a whole.

Plaintiff claims the ALJ erred by not providing independent support from the medical evidence of record for this conclusion, but the ALJ did so in great detail, discussing findings of physical examinations that were generally normal, successful treatment by physical therapy and medication, lumbar spine MRI results, Plaintiff's reported daily activities, and pain management treatment notes.

Thus, the ALJ provided clear, convincing, specific, and legitimate reasons for giving little weight to Dr. Duke's medical assessment.

### B. The ALJ Did Not Err by Misinterpreting Evidence of the Severity of Plaintiff's Back Problems.

Plaintiff contends that the ALJ misinterpreted evidence to the detriment of the Plaintiff by noting that the physical therapy discharge notes dated July 25, 2011, indicated "no limitation" with walking and "mild limitation" with sitting, bending, and recreational exercise and not acknowledging that the initial physical therapy evaluation on April 27, 2011, showed that Plaintiff reported moderate limitations in sitting and walking and severe limitations in bending and recreational exercise before beginning physical therapy.  Plaintiff does not explain what error the ALJ committed by failing to comment on her condition before she began the 8-week therapy she described as successful.

Plaintiff also contends the ALJ misinterpreted the May 29, 2009 MRI report, which stated the impression of "Large L5-S1 disc extrusion to the left with S1 nerve root displacement," and erred by concluding that "evidence of record reveals minimal objective medical evidence supporting the severity of [Plaintiff's] allegations."  Plaintiff incorrectly equates "large disc extrusion" with the degree of any functional limitation imposed by the disc extrusion.

Finally, Plaintiff improperly asks the Court to find error in the ALJ's determination of the severity of Plaintiff's back problems by considering the fact that she eventually had back surgery, which she testified Dr. Ferguson recommended "in the beginning" and she refused.  The surgery performed on May 23, 2013, was not in the

administrative record closed on August 23, 2011, and therefore not considered in this appeal from the administrative determination.

### C. Substantial Evidence Supports the ALJ's Determination that Plaintiff Does Not Have an Impairment or Combination of Impairments That Meets or Medically Equals the Severity of One of the Listed Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Plaintiff contends that the ALJ erred by not finding that Plaintiff has an impairment or combination of impairments that meets or medically equals Listing 1.04(A). To meet the requirements of a listing, a claimant must have a medically determinable impairment that satisfies all of the criteria in the listing. 20 C.F.R. § 404.1525(d).

Listing 1.04(A) requires a disorder of the spine, such as degenerative disc disease, with evidence of "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." "[A] report of atrophy is not acceptable as evidence of significant motor loss without circumferential measurements of both thighs and lower legs, or both upper and lower arms, as appropriate," and must be accompanied by measure of the strength of the muscles in question generally based on a grading system of 0 to 5.

Listing 1.00(B)(2)(a) defines functional loss as the inability to ambulate effectively or perform fine and gross movements effectively on a sustained basis for any reason, including pain. Under Listing 1.00(B)(2)(b)(1), "[i]nability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." Ineffective ambulation generally means the claimant is unable to walk without the use of a walker, two crutches, or two canes. The ALJ "particularly considered the criteria specified under section 1.00 generally of the Listing of

impairments" and concluded that "the medical evidence does not establish limitations of Listing level security." The ALJ elaborated:

> Specifically, physical examinations were largely "normal," "within normal limits," and "unremarkable." Findings repeatedly included "good" muscle strength, bulk and tone; "normal" gait; "normal" range of motion, flexion and extension; "unremarkable" sensory results; and "normal" deep tendon reflexes, with normal neurological findings as well (Exhibits 1F; 2F; 3F; 6F; 22F; 25F; 26F; 27F), despite positive MRI findings with nerve root pressure (Exhibit 25F). Additionally, the claimant uses no assistive device to ambulate and there has been no surgical intervention for her back impairment. Treatment was essentially routine and conservative in nature, consisting of physical therapy and epidural injections, with evidenced efficacy of the claimant's physical therapy and medication regimen (Exhibits 23F; 25F).

Plaintiff contends "the record provides sufficient evidence to meet or medically equal the requirements of Listing 1.04(A)," but she does not identify any evidence of "motor loss (atrophy with associated muscle weakness or muscle weakness)." Plaintiff cites to office visit notes showing decreased range of motion of the spine on several dates in 2010, but the notes also show Plaintiff denied any muscular weakness or atrophy. Similarly, she cites to the physical therapy initial evaluation in April 2011 to show she reported low back pain with radicular symptoms down the left leg, but the evaluation also states that testing showed minimal to moderate tightness in the lumbar paraspinal muscles, negative straight-leg test, and negative quadrant test (L-Spine). Moreover, after 8 weeks of physical therapy, her gait and posture had returned to normal, her spine had 100% active range of motion, and her bilateral muscle strength was 5/5.

Therefore, the ALJ fully considered whether the medical evidence shows that Plaintiff has an impairment or combination of impairments that meets or medically equals the general requirements for any musculoskeletal listing, and substantial evidence establishes that Plaintiff does not have an impairment or combination of impairments that meets or medically equals Listing 1.04(A).

1   IT IS THEREFORE ORDERED that the final decision of the Commissioner of
2   Social Security is affirmed.  The Clerk shall enter judgment accordingly and shall
3   terminate this case.

Dated this 25th day of April, 2014.

Neil V. Wake
United States District Judge